**In re Janet SMITH, Debtor.**

**Brian D. Shapiro, Trustee of the In re Janet Smith Bankruptcy Estate, Plaintiff,**

**v.**

**Janet Smith, Defendant.**

**Bankruptcy No. BK–S–11–21896–MKN. Adversary No. 11–01339–MKN.**

United States Bankruptcy Court, D. Nevada.

Oct. 2, 2012.

Brian D. Shapiro, Kathryn I. Holbert, Law Office of Brian D. Shapiro, LLC, Las Vegas, NV, for Plaintiff.

Christopher Patrick Burke, Las Vegas, NV, for Defendant.

## MEMORANDUM DECISION AFTER TRIAL[1]

MIKE K. NAKAGAWA, Bankruptcy Judge.

A trial in the above-captioned adversary proceeding was held on September 10, 2012. The appearances of counsel were noted on the record. After the trial was concluded and post-trial briefs were filed, the matter was taken under submission.[2]

This memorandum decision constitutes the court's findings of fact and conclusions of law pursuant to FRBP 7052 and FRCP 52.

## DISCUSSION

On April 28, 2006, defendant Janet Smith ("Debtor") filed a voluntary Chapter 13 petition ("Chapter 13 Case"), denominated Case No. 06–10872–LBR.[3] On her real property Schedule "A", Debtor listed certain real property located at 270 Calliope Drive in Las Vegas, Nevada ("Residence"). At the time, Debtor also was the owner of 40 acres of vacant land located in Las Animas County, Colorado ("Colorado Property"). The latter property was not listed on the Debtor's real property schedules. At the time, Debtor also was the owner of a travel trailer ("Trailer") that was located on the Colorado Property. The Trailer was not listed on the Debtor's personal property schedules. Debtor later amended her schedules in the Chapter 13 Case on July 26, 2006, July 27, 2006, and October 15, 2008. In none of the three amendments ("Chapter 13 Amendments") did she disclose her interest in the Colorado Property or the Trailer.

On June 13, 2006, a meeting of creditors under Section 341(a) was conducted in the Chapter 13 Case ("Chapter 13 Meeting"). On August 17, 2006, Debtor's Chapter 13 plan was confirmed. On August 6, 2008, the Chapter 13 Trustee filed a motion to dismiss the Chapter 13 Case because the Debtor had defaulted on her plan payments. On August 20, 2008, Debtor filed opposition to the dismissal motion. On September 4, 2008, Debtor filed a motion to sell the Residence. On September 9, 2008, Debtor filed a proposed modified Chapter 13 plan. On September 24, 2008, an order was entered approving the sale of the Residence. On October 17, 2008, an order confirming the Debtor's modified plan was entered, thereby rendering the dismissal motion moot.

On February 2, 2010, the Chapter 13 Trustee filed another motion to dismiss the Chapter 13 Case because the Debtor had defaulted on the modified plan. On February 10, 2010, in response to the dismissal motion, Debtor filed a further modified plan. A hearing on the dismissal motion as well as the proposed modified plan was initially held on March 18, 2010, but then continued to April 29, 2010, May 13, 2010, May 27, 2010, and then to June 10, 2010.

---

1. In this memorandum, all references to "Section" are to the provisions of the Bankruptcy Code, 11 U.S.C. section 101 et seq. All references to "FRBP" are to the Federal Rules of Bankruptcy Procedure and all references to "FRCP" are to the Federal Rules of Civil Procedure. All references to "FRE" are to the Federal Rules of Evidence.

2. At the conclusion of the trial, the court permitted the parties to file post-trial briefs.

A further proceeding was scheduled for October 10, 2012, at 2:30 p.m. for the court to issue an oral ruling. In view of this memorandum decision and accompanying judgment, an oral ruling no longer is required and that matter is vacated from the court's calendar.

3. The court takes judicial notice of the documents filed in the Chapter 13 Case pursuant to FRE 201.

On or about June 5, 2010, while the Chapter 13 Case was still open, Debtor sold the Colorado Property to a third party for the sum of $42,000. The sale was not disclosed to the Chapter 13 Trustee. On September 3, 2010, the Chapter 13 Trustee filed another motion to dismiss the case because the Debtor still was in default on plan payments. No opposition was filed by the Debtor. On November 1, 2010, an order dismissing the Chapter 13 Case was entered.

On July 28, 2011, Debtor filed a voluntary Chapter 7 petition.[4] Brian D. Shapiro was appointed as the Chapter 7 trustee ("Chapter 7 Trustee") to administer the case ("Chapter 7 Case"). Debtor's real property Schedule "A" listed no assets. Debtor's Statement of Financial Affairs ("Chapter 7 SOFA") identified a transfer of "Rancho Escondido (raw land)" in June 2010 for the amount of $42,000 with the transferees identified as Dan Smith and Shirley Russell.

On August 29, 2011, a meeting of creditors in the Chapter 7 Case was conducted ("Chapter 7 Meeting") by the Chapter 7 Trustee. On October 27, 2011, the Chapter 7 Trustee commenced the above-captioned Adversary Proceeding. The adversary complaint seeks to deny the Debtor a discharge pursuant to Section 727(a)(7) on the ground that the Debtor committed a false oath in her Chapter 13 Case when she failed to disclose the Colorado Property and then sold the property without authorization from the Chapter 13 Trustee or the court. The Chapter 7 Trustee also asserts that the Debtor falsely testified at the Chapter 13 Meeting that she had listed all of her assets. In addition to objecting to discharge pursuant to Section 727(a)(7), the complaint includes a claim of unjust enrichment where the Chapter 7 Trustee seeks to recover from the Debtor the $42,000 that she received from the sale of the Colorado Property. Debtor answered the complaint and denied all claims for relief.

A pretrial conference was scheduled in the Adversary Proceeding for August 29, 2012, along with a September 10, 2012 trial date. Before the pretrial conference, however, Debtor's counsel withdrew. Thereafter, the Debtor apparently sought assistance from the Legal Aid Center of Southern Nevada ("LACSN"). At the pretrial conference, new counsel for the Debtor appeared, on a pro bono basis.[5] Rather than continue the matter, the parties agreed to go forward on the scheduled trial.

At the trial, Debtor was the only witness called by the Chapter 7 Trustee and was subject to direct and cross examination. Seventeen documents were admitted into evidence. After the close of evidence, the Chapter 7 Trustee requested to submit post-trial briefs and the court set a briefing schedule. The Chapter 7 Trustee submitted his brief on September 17, 2012,

---

4. Even though the Chapter 13 Case had been dismissed within one year of filing the current case, no steps were taken under Section 362(c)(3) to continue the automatic stay in the current case. As a result, the automatic stay under Section 362(a) elapsed as to both the Debtor and the bankruptcy estate pursuant to Section 362(c)(3). *See Reswick v. Reswick, et al. (In re Reswick),* 446 B.R. 362, 373 (9th Cir. BAP 2011).

5. The court appreciates the work of LACSN and Debtor's counsel in arranging and providing pro bono legal services in this matter. The court also appreciates that the Chapter 7 Trustee, in his separate professional capacity, also works with LACSN to provide pro bono legal services to indigent parties in other matters. Regardless of the outcomes in particular cases, the importance of the pro bono services provided by these counsel as well as others, should not be underestimated.

and Debtor submitted hers on September 28, 2012.

The court having considered the evidence presented, as well as the written and oral arguments of counsel, concludes that the Chapter 7 Trustee's objection to the Debtor's discharge must be overruled. Additionally, the court concludes that the Chapter 7 Trustee's claim for unjust enrichment must be denied.

## A. *The Discharge Objection.*

■ Section 727 is construed liberally in favor of a discharge and strictly against the party objecting to discharge. *See First Beverly Bank v. Adeeb (In re Adeeb),* 787 F.2d 1339, 1342 (9th Cir.1986). Section 727(a)(7) provides for a debtor's discharge to be denied if within one year prior to the commencement of a bankruptcy case, the debtor committed an act in a prior bankruptcy case which would have prevented a discharge from being entered in the prior case. Among the acts prohibited is the debtor's commission of a "false oath" in the prior case encompassed by Section 727(a)(4). The latter provides that a bankruptcy court "shall grant the debtor a discharge unless … the debtor knowingly and fraudulently, in or in connection with the case … made a false oath or account…." 11 U.S.C. § 727(a)(4)(A).

■ The party seeking to deny a discharge under Section 727(a)(4) must establish, by a preponderance of the evidence, four elements: (1) that the debtor made a false oath in connection with the case, (2) that the oath related to a material fact, (3) that the oath was made knowingly, and (4) that the oath was made fraudulently. *See Retz v. Samson, et al. (In re Retz),* 606 F.3d 1189, 1197 (9th Cir.2010). Omissions or false statements in a debtor's schedules may constitute a false oath under the statute. *See, e.g., Kendall v. Turner, et al. (In re Turner),* 335 B.R. 140, 148 (Bankr.

N.D.Cal.2005) (omitting the debtor's residence from schedules). Debtors have a continuing duty to ensure the accuracy and completeness of their schedules. *See Searles v. Riley (In re Searles),* 317 B.R. 368, 378 (9th Cir. BAP 2004).

■ Because the false oath must be made knowingly and fraudulently, proof of the debtor's actual fraudulent intent is required. *See Fogal Legware of Switz., Inc. v. Wills (In re Wills),* 243 B.R. 58, 64 (9th Cir. BAP 1999). A finding of fraudulent intent, of course, can be based on circumstantial evidence, *see id.,* and reckless disregard for the truth and accuracy of the debtor's schedules and statements, along with other evidence, may support such a finding. *See Khalil v. Developers Sur. & Indem. Co. (In re Khalil),* 379 B.R. 163, 177 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir.2009). A debtor cannot rely on the advice of counsel as a defense to a failure to disclose where the debtor never discloses the facts to counsel. *See In re Retz,* 606 F.3d at 1202.

■ As previously noted, Debtor was the only witness who testified at trial and the court generally finds her testimony to be credible. During the course of her testimony, Debtor frequently referred to actions by or statements made by third parties outside of her presence, or statements made to her by third parties including her bankruptcy attorney, without objection by the Chapter 7 Trustee. The same attorney represented the Debtor in both her Chapter 13 Case and the Chapter 7 Case (before withdrawing as counsel of record).

Debtor testified at trial that she has no legal training, has no experience in law, and has never prepared a bankruptcy petition. She had two years of college experience in commercial art and interior design. She once owned a printing business that

closed in 2006. After the business closed, she has had varied employment in the sale of furniture, the sale and lease of photocopiers, the sale of printing supplies, and part-time work at a convenience store.

Debtor testified that she informed her bankruptcy counsel about the Colorado Property before the Chapter 13 Case was filed and that her counsel requested that she obtain an appraisal. A copy of the appraisal, as of March 25, 2006, is admitted into evidence as Exhibit 16. Debtor also attested that she informed her counsel about the Trailer, that it had little value, and that she was told by her counsel not to worry about it.

Debtor testified that her counsel advised her that the Colorado Property could not be sold unless her Chapter 13 Case was "dissolved." She testified that before the Colorado Property was sold, she spoke to her attorney who told her that her case had been "dissolved" and that it was permissible to sell the property. Debtor also testified that before the Colorado Property was sold in June 2010, the realtor handling the sale contacted Debtor's counsel who indicated that the sale could go forward. Likewise, Debtor testified that the title company involved in the sale contacted Debtor's counsel and also was told that the Colorado Property could be sold. Admitted as Exhibit 19 is a copy of a facsimile transmission sheet from Debtor's counsel dated June 8, 2010, that apparently advised the realtor that the sale could go forward. That exhibit indicates that a total of six pages was transmitted but only one additional page is included in the exhibit. That additional page appears to be a computer printout setting forth the status of the Chapter 13 Case, indicating that a plan confirmation hearing had been continued from May 27, 2010, and that a motion to dismiss was scheduled to be heard on June 10, 2010. Debtor testified

that she knew she could not sell the Colorado Property without court authorization because her attorney had gotten prior court permission to sell the Residence. She stated that she believed her attorney had gotten her Chapter 13 Case dissolved because he told her to go ahead with the sale of the Colorado Property. Debtor testified that it was only through the assistance of LACSN that she later learned that her attorney had never filed a motion to dismiss her Chapter 13 Case before the Colorado Property was sold.

Debtor also stated at trial that when she testified at the Chapter 13 Meeting, she told the Chapter 13 Trustee that everything had been disclosed in her schedules because she believed that her attorney had listed everything. Additionally, when she testified at her Chapter 7 Meeting, Debtor also stated that she had disclosed all of her assets in her Chapter 13 Case. At trial, Debtor stated that at the time she testified at both creditor meetings, she believed that the schedules filed in her Chapter 13 Case were complete and accurate. She also stated that she was not aware of any discrepancies in her prior schedules until after she completed her Chapter 7 Meeting.

Exhibit 15 admitted at trial is a copy of the Debtor's bankruptcy petition in the Chapter 13 Case that bears the Debtor's signature. This is in contrast to the copy of the bankruptcy petition that appears on the docket of the Debtor's Chapter 13 Case, admitted as Exhibit 1, which bears the Debtor's electronic signature. At trial, Debtor testified that she signed a stack of papers at her attorney's office prior to the commencement of the Chapter 13 Case and that those papers listed the Colorado Property. Debtor testified that immediately after her Chapter 13 Meeting was completed, she signed another set of papers that were presented to her by her

bankruptcy attorney. Debtor testified that she did not review the second set of papers before she signed them. The declaration concerning debtor's schedules also bears the Debtor's original signature and is dated April 26, 2006, i.e., two days before her Chapter 13 petition was filed.

Copies of the Chapter 13 Amendments filed in the Debtor's Chapter 13 Case were admitted into evidence as Exhibits 4, 5 and 8. None of those documents bear the Debtor's original signature and each has either an electronic signature or the Debtor's name hand printed. Other than the name itself, the hand printing on Exhibit 5 does not appear to be similar in any way to the Debtor's signature as it appears on Exhibit 15.

Debtor testified that she never intended to hide the Colorado Property from the Chapter 13 Trustee and she would never have signed bankruptcy schedules under penalty of perjury if she thought they were inaccurate.

As previously observed, the court finds the Debtor's testimony generally to be credible. The Chapter 7 Trustee originally listed Debtor's former counsel as a witness, but did not call him at trial. Employees of Debtor's former counsel also were not called at trial, nor were representatives of the realtor or title company that were involved in the sale of the Colorado Property. Likewise, the appraiser of the Colorado Property was not called to testify as to who received a copy of the appraisal. In short, there were no witnesses introduced whose testimony would contest the representations of the Debtor.

Debtor testified without contradiction that she informed her former counsel of the Colorado Property and obtained the appraisal at his request. Debtor testified that she saw the Colorado Property listed in a "stack of papers" that she signed at counsel's office, and believed that her attorney had disclosed the property in her bankruptcy. Because neither counsel nor his staff was called to testify, there was no evidence presented that the Debtor concealed the information from her counsel or as to why the Colorado Property did not appear in the Debtor's original schedules. Additionally, Debtor was not asked at trial whether she ever signed any of the Chapter 13 Amendments, none of which bear her original signature. Her testimony that she signed a second set of documents after the Chapter 13 Meeting without reviewing them is not inconsistent with her belief that the original set included the Colorado Property.[6] This also is consistent with the Debtor's testimony that she was unaware that she had not disclosed the Colorado Property in her Chapter 13 Case until after her Chapter 7 Meeting.

That the Debtor disclosed the June 2010 sale of the Colorado Property in her Chapter 7 SOFA also is noteworthy. If the Debtor and/or her counsel had intended to conceal the sale of the Colorado Property, then presumably the sale would not have been disclosed in the Chapter 7 SOFA and perhaps the Chapter 7 Trustee would never have discovered it.[7] Disclosure in the

---

**6.** Debtor's Chapter 13 petition and schedules filed with the bankruptcy court contain only electronic signatures. Under Local Rule 5005 and the Electronic Filing Procedures Guidelines for this judicial district, counsel generally are required to retain original signatures of the documents filed electronically with the bankruptcy court. It is not clear whether counsel filed with Chapter 13 petition and schedules with the Debtor's authorization and later obtained the original "wet signatures" of the client after the Chapter 13 Meeting.

**7.** The court has considered and rejected the alternate possibility that the disclosure of the sale in the Chapter 7 SOFA was the result of unintentional bungling, i.e., that a surreptitious sale of the Colorado Property was mis-

Chapter 7 SOFA is consistent with the Debtor's belief, and perhaps of her former counsel, that the Colorado Property had in fact been disclosed in the Chapter 13 Case.

Debtor's belief that the Chapter 13 Case had been "dissolved"—which the court construes to have meant to be "dismissed"—also is persuasive that the Debtor did not act with actual fraudulent intent. Debtor did not attempt to sell the Colorado Property without court authorization, but instead waited until her counsel's assurance that the Chapter 13 Case had been dismissed. Only afterwards did the sale move forward to completion.[8]

Moreover, because a Chapter 13 proceeding is entirely voluntary where a debtor can seek dismissal at any time, *see* 11 U.S.C. § 1307(b), Debtor reasonably could have believed that her counsel could have the Chapter 13 Case dismissed immediately. While it is equally plausible that counsel believed the case already had been dismissed or would be dismissed by June 10, 2010[9], it is not readily apparent why counsel did not file a voluntary dismissal notice to ensure an immediate dismissal of the Chapter 13 Case. In short, Debtor did not rely on counsel to do an impossible task, but instead relied on her counsel's assurance that her bankruptcy case had been dismissed and that the sale could be completed.

Under these circumstances, the court concludes that the Chapter 7 Trustee has failed to establish that the Debtor knowingly made a false oath in her Chapter 13 schedules, or had actual fraudulent intent in omitting the Colorado Property and the Trailer from her Chapter 13 schedules. As a consequence, the Chapter 7 Trustee also has failed to establish that the debtor knowingly and had actual fraudulent intent when she testified at the Chapter 13 Meeting and the Chapter 7 Meeting that she had disclosed all of her assets in the Chapter 13 Case.

### B. *The Unjust Enrichment Claim.*

Although the adversary complaint included a claim for unjust enrichment, the claim was entirely ignored in the trial statement filed by the Chapter 7 Trustee and discussed only in the conclusion of the post-trial brief filed by the Chapter 7 Trustee. No authorities have been cited by the Chapter 7 Trustee articulating the basis on which he would prevail on such a claim.

 Generally, under Nevada law, "[an] action based on a theory of unjust enrichment is not available when there is an express, written contract, because no agreement can be implied when there is an express agreement." *Leasepartners Corp. v. Robert L. Brooks Trust, etc.,* 113 Nev. 747, 755, 942 P.2d 182, 187 (Nev.1997).

---

takenly disclosed. Instead, the court finds credible the Debtor's testimony that she believed the Colorado Property had been disclosed in her Chapter 13 Case.

**8.** A copy of the sale closing statement or the transfer deed was not introduced into evidence. The precise date of the sale of the Colorado Property was never established at trial, although the adversary complaint alleged that the sale closed on or about June 5, 2010.

**9.** The record is clear that the Chapter 13 Trustee had filed a motion to dismiss and that the Debtor's counsel did not file opposition. The hearing had been continued on numerous occasions and finally to June 10, 2010. It is common practice in this judicial district for Chapter 13 trustees to request entry of a dismissal order when opposition has not been filed and a debtor's counsel does not appear at the hearing to request a continuance. It is not entirely clear why the Debtor's Chapter 13 Case was not simply dismissed at the June 10, 2012 hearing.

Unjust enrichment exists "when the plaintiff confers a benefit on the defendant, the defendant appreciates such benefit, and there is 'acceptance and retention by the defendant of such benefit under circumstances such that it would be inequitable for him to retain the benefit without payment of the value thereof.'" *Certified Fire Prot., Inc. v. Precision Const.*, —— Nev. ——, 283 P.3d 250, 257 (2012) (citation omitted).

In this case, the Debtor apparently received most of the proceeds from the sale of the Colorado Property, but the precise amount was never determined at trial. The court has determined, however, that the Debtor actually believed that the Colorado Property had been disclosed in her Chapter 13 Case. Additionally, the court has determined that the Debtor sold the Colorado Property based on assurances from her counsel that the sale could proceed. Under these circumstances, the court concludes that it would not be inequitable for the Debtor to retain the sale proceeds.

## CONCLUSION

For the reasons discussed above, the Chapter 7 Trustee's objection to discharge under Section 727(a)(7) will be overruled. Additionally, the Chapter 7 Trustee's claim for unjust enrichment will be denied. A judgment consistent with this memorandum decision has been entered concurrently herewith.

