**NOT FOR PUBLICATION**

**UNITED STATES BANKRUPTCY APPELLATE PANEL**
**OF THE NINTH CIRCUIT**

In re:                              )      BAP No.   NC-17-1061-TaBS
                                    )
AZAD AMIRI,                         )      Bk. No.   13-45900
                                    )
            Debtor.                 )      Adv. No.  14-04011
_____)
                                    )
AZAD AMIRI,                         )
                                    )
            Appellant,              )
                                    )
v.                                  )      **MEMORANDUM**[*]
                                    )
RAMOS OIL COMPANY, INC.,            )
                                    )
            Appellee.               )
_____)

Argued and Submitted on January 25, 2018
at San Francisco, California

Filed – February 13, 2018

Appeal from the United States Bankruptcy Court
for the Northern District of California

Honorable William J. Lafferty III, Bankruptcy Judge, Presiding

_____

Appearances:    John T. Schreiber of the Law Offices of John T.
                Schreiber argued for appellant; Walter R. Dahl of
                Dahl Law, Attorneys at Law argued for appellee.

_____

Before:   TAYLOR, BRAND, and SPRAKER, Bankruptcy Judges.

_____

[*]   This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8024-1(c)(2).

**INTRODUCTION**

Debtor Azad Amiri's statement of financial affairs omitted the required disclosure that he was or had been an officer or director of four corporations. Ramos Oil Co., Inc. ("Ramos Oil"), one of Debtor's creditors, asserted through an adversary proceeding that this omission constituted a knowing and fraudulent false oath that justified a denial of discharge under § 727(a)(4).[1] After trial, the bankruptcy court agreed with Ramos Oil. And on appeal, Debtor does not challenge most of the bankruptcy court's findings. Instead, he argues only that his acknowledged omissions were not material and, thus, that they do not justify denial of discharge. We disagree, and we AFFIRM the bankruptcy court.

**FACTS**

Debtor has a decades-long involvement in the oil and gas industry including more recent partial ownership of Kang Properties, the owner-operator of a South Lake Tahoe gas station. Ramos Oil, a Kang Properties supplier, obtained a judgment against Kang Properties and Debtor through state court litigation.

Debtor is no stranger to the bankruptcy system; he filed a chapter 11 in 1993, a chapter 13 in 2009, and a chapter 13 in 2010. And following the Ramos Oil judgment, he again initiated personal bankruptcy and also caused Kang Properties to file a bankruptcy petition.

---

[1] Unless otherwise indicated, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

2

Ramos Oil responded with an adversary proceeding seeking to deny Debtor a discharge under § 727(a). Eventually, the bankruptcy court held a one-day trial related to objections to discharge under § 727(a)(2)(A) and (a)(4). In his subsequent oral ruling, the bankruptcy judge ruled against Ramos Oil on its § 727(a)(2) claim; Ramos Oil did not appeal from this determination, and we do not discuss it further. But the bankruptcy court ruled in favor of Ramos Oil on its § 727(a)(4) claim. The bankruptcy judge explained: "I don't think there's any question but that in connection with the answer to Question No. 18 in the Statement of Financial Affairs that was filed by the Debtor, the Debtor did not list everything that was supposed to be listed." Hr'g Tr. (Jan. 30, 2017) 12:12-16.

More particularly, Statement of Financial Affairs ("SOFA") question 18 requires a debtor to disclose information about business entities in which the debtor acted as an officer, director, partner, or managing executive during the six years before he filed bankruptcy. And the bankruptcy court found that Debtor failed to disclose that he was:

- CEO/CFO and agent for service of process for Dara Petroleum, Inc.;
- CEO/CFO, secretary, and agent for service of process for Ameri Oil Company, Inc.;
- CEO, secretary, CFO, and agent for service of process for Aria Oil Company;[2] and

---

[2] Debtor submitted a post-petition resignation as agent for service of process of Dara, Ameri, and Aria.

3

• Secretary, CFO, and agent for service of process for Ameri Oil DK Property.

The bankruptcy court found that these omissions were unquestionably false oaths, and he later determined that the omissions were knowing and fraudulent.

The bankruptcy judge also carefully considered whether the omissions were material. He recognized that the monetary impact of the omitted information may have been small and acknowledged Debtor's "no harm-no foul" argument. And he recognized that some cases recite that "there has to be some level of importance to the failure to disclose[,]" which "is most easily measured usually by the value of the thing that would have been available to the estate . . . ." Hr'g Tr. 15:3-7. But he also noted that other cases, such as Fogal Legware of Switzerland, Inc. v. Wills (In re Wills), 243 B.R. 58 (9th Cir. BAP 1999), define materiality more broadly and that materiality does not necessarily "depend on the absolute value of assets that were not disclosed," but rather it could "depend on other things like whether the admissions made it impossible to administer the case . . . ." Id. at 15:10-24. The bankruptcy judge found this concept particularly relevant. He explained:

> [W]hen somebody doesn't make a disclosure, it makes it impossible to follow up and to find out what happened. And that affects the transparency of the system. It clearly affects the administration of the system, and especially in this case, which I'll get to in a second. And it puts us in a situation which the Wills case and many other cases tell us we're supposed to avoid, where the trustee is put to the task of having to undergo lengthy and expensive investigations just to figure out what was really the story on the day the Debtor filed the bankruptcy.
>
> . . . [T]he fact that we don't know anything about these

4

companies via the schedules is very troubling. And it's all the more troubling frankly because these were -- [they] appear[] to be closely held businesses, and they were businesses that from the testimony and the inferences I think I can draw therefrom, were managed in some way by the Debtor -- might have been managed by others -- and they seemed to have been either familial relationships or relationships within a community of close friends and advisors. That is exactly the kind of business and exactly the kind of arrangements between businesses that can sometimes lead to the discovery of assets even when the Debtor might believe that that's not likely.

. . . [I]t is frequently the case that people don't take the steps they should take to insulate certain kinds of transactions or they don't document things properly, or they otherwise naively think that having done "X", they've achieved "Y" and they don't. And those are all things that a trustee is entitled to look at and try to get some value for the estate, and I think both counsel . . . have been through this process enough to know that in these, you know, what I will call, relatively less cumbersome and smaller corporate or LLC structures, it's frequently the case that there is some recovery available when one might not expect so.

Id. at 16:5-15:1 (paragraph break added). The bankruptcy judge finally emphasized:

But I do think that the nature of these businesses is extremely important in this analysis because it's just not possible to say as we sit here that we can have any confidence either that we know enough about the Debtor's involvement in the businesses or that the businesses and those relationships, had they been known, you know, would not have or could not have led to something else that would have been of meaning to the estate.

Id. at 18:7-14.

The bankruptcy court entered a judgment denying Debtor's bankruptcy discharge under § 727(a)(4). Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction under 28 U.S.C. §§ 1334 and 157(b)(2)(J). We have jurisdiction under 28 U.S.C. § 158.

5

**ISSUE**

Whether the bankruptcy court erred in concluding that Debtor's omissions were material.

**STANDARD OF REVIEW**

We review the bankruptcy court's: (1) determinations of the historical facts for clear error; (2) selection of the applicable legal rules under § 727 de novo; and (3) application of the facts to those rules requiring the exercise of judgments about values animating the rules de novo. Retz v. Samson (In re Retz), 606 F.3d 1189, 1196 (9th Cir. 2010). A factual finding is clearly erroneous if it is illogical, implausible, or without support in inferences that may be drawn from the facts in the record. Id.

**DISCUSSION**

Section 727(a)(4)(A) provides for discharge denial where "the debtor knowingly and fraudulently, in or in connection with the case[,] made a false oath or account." 11 U.S.C. § 727(a)(4)(A). And the objector to discharge must show that "the relevant false oath relate[s] to a material fact." Retz, 606 F.3d at 1198 (citing Roberts v. Erhard (In re Roberts), 331 B.R. 876, 882 (9th Cir. BAP 2005)).

"The fundamental purpose of § 727(a)(4)(A) is to insure that the trustee and creditors have accurate information without having to conduct costly investigations." Id. at 1196 (internal quotation marks and citation omitted). Thus, materiality must be evaluated with this fundamental purpose in mind. Concurrently, however, the court evaluating objections to discharge must remember that they are liberally construed in

6

favor of the debtor and against the objector. Khalil v. Developers Sur. & Indem. Co. (In re Khalil), 379 B.R. 163, 172 (9th Cir. BAP 2007), aff'd, 578 F.3d 1167 (9th Cir. 2009).

A fact is material if:

"[']it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" In re Khalil, 379 B.R. at 173 (quoting In re Wills, 243 B.R. at 62). An omission or misstatement that "detrimentally affects administration of the estate" is material. In re Wills, 243 B.R. at 63 (citing 6 Lawrence P. King et al., Collier on Bankruptcy ¶ 727.04[1][b] (15th ed. rev. 1998)).

Retz, 606 F.3d at 1198.

Debtor argues that the bankruptcy court uses an overly broad definition of "material" that renders the term meaningless; in essence, he argues that the bankruptcy court applied an incorrect legal standard when assessing materiality. We disagree; the bankruptcy court identified and recited the correct legal standard for materiality and then correctly applied this standard under the facts of this case.[3]

The bankruptcy court explained why the omissions were highly relevant to the administration of Debtor's bankruptcy case and estate. It emphasized the nature of the corporations: small companies where Debtor's friends or family were in

_____

[3] We assume that we conduct a de novo, as opposed to clear error, review of a "materiality" determination under § 727(a)(4) as it appears to be a mixed question of law and fact. But we also acknowledge some murkiness in the relevant caselaw. Here, however, the standard of review is not outcome-determinative because we agree with the bankruptcy court's conclusion even under the more exacting de novo review standard.

7

control; this appropriately suggested to the bankruptcy court that a chapter 7 trustee would have looked carefully for recovery opportunities and might have found them. It limited its findings to the specific facts of the case. We also find support in the record for the materiality determination in the numerosity of the omissions and the fact that the omissions of officer status were in connection with business transactions or dealings. A failure to omit membership on a not-for-profit board might require a different ruling, but here there is no dispute that the businesses were profit-centered.

Debtor also notes that the chapter 7 trustee did not find anything material missing or have difficulty administering the estate because the trustee, after the meeting of creditors, issued a no distribution report. And at oral argument, Debtor's counsel emphasized that the chapter 7 trustee did not pursue any actions related to the non-disclosed positions, suggesting that the omissions were de minimis and thus not material.

This is disingenuous; at oral argument, Debtor's counsel conceded that he did not know if Debtor disclosed the information at the § 341(a) meeting, and the transcript of the § 341(a) meeting is not on the docket and was not presented to the bankruptcy court.[4] Debtor's assertion is pure postulation, ungrounded in fact.

Further, even an omission of a non-asset is material if the

---

[4] Although Ramos Oil's counsel, at oral argument, stated that Debtor did not disclose the information at the § 341(a) meeting, he conceded that the record does not include the § 341(a) transcript.

8

omission negatively impacts a trustee's administration of the estate. In re Wills, 243 B.R. at 63 ("However, an omission or misstatement relating to an asset that is of little value or that would not be property of the estate is material if the omission or misstatement detrimentally affects administration of the estate."). The bankruptcy court identified exactly this type of negative impact in its materiality determinations.

Notwithstanding that the bankruptcy court found material omissions in Debtor's response to SOFA question 18, Debtor attempts to use the question's text to bolster his argument that his omissions were not material. As relevant here, SOFA question 18 requires that an individual debtor disclose:

> the names, addresses, taxpayer identification numbers, nature of the businesses, and beginning and ending dates of all businesses in which the debtor was an officer, director, partner, or managing executive of a corporation, . . . within six years immediately preceding the commencement of this case, or in which the debtor owned 5 percent or more of the voting or equity securities within six years immediately preceding the commencement of this case.[5]

Debtor repeatedly emphasizes the required disclosure related to companies where a debtor held a 5% equity interest during the six years preceding his bankruptcy. But the 5% equity disclosure requirement in SOFA question 18 is neither

---

[5] The Statement of Financial Affairs form has since been revised, effective April 1, 2016. Revised Official Form 107 question 27 is even clearer; it asks: "Within 4 years before you filed for bankruptcy, did you own a business or have any of the following connections to any business?" It then provides a number of check-boxes, including: "An officer, director, or managing executive of a corporation" and, separately, "An owner of at least 5% of the voting or equity securities of a corporation[.]"

9

controlling nor even necessarily relevant to SOFA question 18's dual requirement that a debtor disclose companies where the debtor was an officer or director; it is written as an "either/or" not a "both/and."

Thus, Debtor's argued interpretation that materiality in relation to a SOFA question 18 omission exists only where he was both an officer and the holder of at least a 5% equity interest is severely flawed. The bankruptcy court correctly concluded that "the Code requires complete and thorough and uneditorialized disclosure of all these issues, including those in businesses that may not be equity interests." Hr'g Tr. at 16:16-19. Debtor was not free to selectively omit responsive information and then to excuse the omission in this convoluted fashion.

Further, Debtor's position is contradicted by language from the Ninth Circuit case he cites; materiality exists where the omitted fact, among other things, relates to a debtor's business transactions, the discovery of assets, or business dealings. Retz, 606 F.3d at 1198. Here, Debtor failed to disclose facts (his being an officer in four corporations) that involved his business dealings and might have led a trustee to the discovery of assets. At oral argument, Debtor's counsel further suggested that the disclosure of Debtor's "business dealings" was not relevant because this was his personal bankruptcy filing; we disagree: even an individual debtor has business dealings.

Debtor also next argues that all of the relevant § 727(a)(4) materiality caselaw involves omissions of estate assets or former debtor assets. We disagree that the caselaw

10

limits materiality as Debtor argues. In the laundry list of cases Debtor cites and discusses, the relevant material omissions involved assets, as Debtor puts it, "belonging or that had belonged to the debtor's estate." That does not, however, mean that only omissions related to property of the estate qualify as material omissions for § 727(a)(4) purposes. Neither § 727(a)(4) as written nor its caselaw developed elements have a "property of the estate" component.[6]

In short, we find no error in the bankruptcy court's conclusion that, under the facts of this case, Debtor's omissions of his status as an officer or director of four corporations during the time period identified by SOFA question 18 were material. Debtor does not otherwise challenge the bankruptcy court's findings.

## CONCLUSION

Based on the foregoing, we AFFIRM.

---

[6] Debtor obliquely refers to <u>Robertson v. Swanson (In re Swanson)</u>, 36 B.R. 99 (9th Cir. BAP 1984), but does not discuss it in any depth. It is not analogous. There, the Panel reversed the bankruptcy court's judgment denying a debtor a discharge because the debtor did not list his accountancy practice in his bankruptcy schedules. <u>Id.</u> at 99-100. The Panel reversed because the debtor fully disclosed his employment history, including his accountancy practice, and because, under § 541(a)(6), any future earnings would not be property of the bankruptcy estate. <u>Id.</u> at 100. As the Panel explained: "No asset was hidden." <u>Id.</u> In the present case, Debtor never disclosed his relationship with any of the four companies.

11